NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Frank.Russo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:04-cr-00003-03-JWS |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION |
| | ) | TO MOTION  TO VACATE |
| vs. | ) | SENTENCE UNDER |
| | ) | 28 U.S.C. § 2255 AND OPPOSITION |
| LESLIE J. WILLIAMS, Jr., | ) | TO AN EVIDENTIARY HEARING |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States, by and through the United States Attorney for the

District of Alaska, opposes Leslie J. Williams' petition to vacate his sentence

pursuant to 28 U.S.C. § 2255.  The defendant's petition should be denied because

he waived the right to collaterally attack his conviction and sentence in the plea

agreement; he fails to raise cognizable constitutional violations; and his claims

otherwise lack substantive merit, have been previously decided, and are flatly contradicted by the record.   In sum, the defendant has no grounds to complain that his sentence (which was below the advisory Guideline range) was the result of ineffective assistance of counsel.  Moreover, no evidentiary hearing is necessary to decides the issues the defendant raises.

## BACKGROUND

By indictment dated January 21, 2004, the defendant, Leslie J. Williams, along with three co-defendants, was charged with Conspiracy to Distribute cocaine and cocaine base to persons under 21 years of age, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 859(a), and with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  [Presentence Report, dated January 30, 2004, hereinafter "PSR", ¶ 4; Indictment, docket 1].  The indictment stemmed from an investigation by the Anchorage Police Department ("APD") and Federal Bureau of Investigation ("FBI") that uncovered a sex trafficking and distribution ring involving Josef Boehm, Bambi Tyree, Allen Bolling, and the defendant from late 2001 through December 22, 2004. [Indictment, Count 1.]  The Indictment alleged that the defendant's role in the conspiracy was to provide Boehm and underage females with crack cocaine and cocaine.  In exchange, the girls would have sex with Boehm, the defendant, and other members of the conspiracy. [Id.]

The United States Probation Office ("USPO") found that Williams and his co-defendant, Allen Bolling, supplied several thousands dollars of cocaine to Boehm on an almost daily basis. [PSR, Attachment A, ¶ 11.]  Boehm would use the cocaine himself as well as provide the cocaine to the young girls. [Id. ¶¶ 11, 12.] The defendant would also bring young girls as well as cocaine to the residence. [Id., ¶ 48.][1]  Based upon statements of victims, as well as bank records reviewed by investigators, the USPO found that during the three year period that the conspiracy was in existence, over five kilograms of cocaine was distributed to Boehm and others. [Id. ¶ 60.]

On February 5, 2004, the defendant entered into a proffer agreement, under which he agreed to give a statement concerning his and others' criminal activities. [See Letter to Scott Dattan, dated February 4, 2004 ("Proffer Letter"), attached hereto as Exhibit A].  In return, the government agreed that no statement or information the defendant provided would be used to enhance the defendant's sentence under the sentencing guidelines.  [Ex. A, p. 2, ¶ 5.]  However, the defendant agreed that there were no restrictions on the use of information previously known to the government or revealed to the government through an

---

[1]     Attachment A to the pre-sentence report is replete with testimony and evidence that Williams provided cocaine to Boehm as well as had sex with teenagers.

independent source. [Id.] In addition, the defendant agreed to plead guilty to one count of Conspiracy to Distribute controlled substances to underage persons, in violation of 21 U.S.C. § 846. [Id., ¶ 9.]

In the meantime, the case against Boehm continued to progress, with new victims and new allegations. As a result, on March 17, 2004 – prior to the defendant reaching a formal plea agreement with the United States – the Grand Jury returned superseding indictment against all defendants, essentially adding numerous crimes involving the sex trafficking of children in violation of 18 U.S.C. §§ 371 and 1591. See First Superseding Indictment, docket 161. Nevertheless, because of the earlier assurance contained in the Proffer Letter obtained by his attorney, as well as his early decision to cooperate, the defendant was offered a plea agreement under which he would agree to plead guilty to Conspiracy to Distribute controlled substances to underage persons, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and 859. This charge – Count 9 of the First Superseding Indictment – was identical to what the defendant was charged with in Count 1 of the original indictment. A copy of the Plea Agreement is attached hereto as Exhibit B.

The Plea Agreement contained a detailed account of the defendant's understanding of the parameters of his plea agreement. In essence, in exchange

for the defendant's guilty plea, the United States agreed to dismiss the other eight counts of the superseding indictment, as well as to recommend a three level reduction for acceptance of responsibility. [Ex. B, p. 2.] In addition, the plea agreement allowed for up to a 50% reduction should the defendant qualify for substantial assistance pursuant to U.S.S.G. 5K1.1. [Id., p. 3.] A lynchpin of the defendant's plea agreement was the defendant's admission to the quantity that he conspired to distribute.  To this end, the plea agreement provided: "Pursuant to this written agreement, the defendant agrees to plead guilty to Count 9 and admits that he conspired to distribute and to possess with intent to distribute over five kilograms of cocaine to persons under 21 years of age, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and 859(a)." [Id., p. 5.]  The defendant also stipulated that, "[w]ith regard to Count 9, the parties agree that during the period of the conspiracy, the defendant distributed at least over five kilograms of cocaine. Thus, pursuant to U.S.S.G. § 2D1.1(c)(4),  the defendant agrees his base offense level is at least 32." [Id., p. 20 (emphasis added).]  Finally, within the factual basis, the defendant admitted that Boehm was supplied "with at least five kilograms of cocaine during the period of the conspiracy."   [Id., p. 24.] As a result, the plea agreement estimated the defendant's guideline range as 151 to 188 months.

 [Id., p. 19.]

U.S. v. L. Williams
3:04-cr-00003-03-JWS                    5

Another significant concession contained within the defendant's plea agreement was his waiver of both his right to appeal as well as to collaterally attack his conviction.  Both of these waivers were set forth in detail in the plea agreement. [Id., pp. 14-15; 28.]  With respect to the collateral attack waiver, the only exceptions set forth in the plea agreement were based on an involuntary plea or ineffective assistance of counsel not known to the defendant at the time of sentencing, or through the exercise of reasonable diligence could not have been known by him at the time of sentencing. [Id., pp. 14-15; 28.]  Moreover, within the plea agreement, the defendant affirmed that he had "read this plea agreement carefully and underst[ood] it thoroughly" [Id., p. 31.]  He further represented that he was "fully satisfied with the representation given [him] by [his] attorney."  [Id., p. 28.]   The defendant signed the plea agreement on May 7, 2004, and the plea agreement was filed on May 12, 2004.

A change of plea hearing was held on May 17, 2004, before Chief District Court Judge John W. Sedwick.  A copy of the change of plea hearing is attached hereto as Exhibit C.  Initially, the defendant voiced some reservations about the five kilogram figure contained in the plea agreement. [Ex. C, pp. 7 - 10.] These reservations were resolved during an off-record conference with his defense attorney, D. Scott Dattan.  After the conference, Mr. Dattan explained that Mr.

Williams was having problems with the concept of relevant conduct. [Id., pp. 9 -

10.] The Court then explained the concept of relevant conduct to the defendant,

who replied that all his questions had been answered. [Id., p. 11.] Thereafter, the

defendant was advised of the nature of the plea agreement, the charges, the

maximum statutory penalty of 40 years that he faced, the minimum sentence of

one year, as well as his trial rights. [Id., p. 13 - 18.] The defendant stated that he

had read and signed the plea agreement, and that no threats or promises were made

to persuade him to plead guilty. [Id., p. 12-13.]  He also indicated that he was

satisfied with Mr. Dattan's services as his lawyer. [Id., p. 12.] The factual basis

supporting the guilty plea was put on the record, including the fact that at least

five kilograms of cocaine were involved during the period of the conspiracy. [Id.,

pp. 18-19.] The defendant agreed to the factual statement and pled guilty. [Id., p.

20.] Judge Sedwick found that the defendant had knowingly and voluntarily pled

guilty supported by an independent basis in fact. [Id., p. 20.]

Approximately one month after the defendant's guilty plea, the Supreme

Court decided Blakely v. Washington, 124 S. Ct. 2531 (2004), which called into

question the mandatory applicability of the United States Sentencing Guidelines.

Less than one month later, on July 15, 2004, the defendant filed a request to

withdraw his guilty plea, claiming ineffective assistance of counsel, among other

things.   Despite his earlier assurances to the Court regarding his acceptance of the

relevant conduct, the defendant reversed field and objected to the five kilogram

amount, as well as any other enhancements found in his plea agreement.  New

counsel, Henry Graper, was appointed to review the defendant's claim of

ineffective assistance of counsel and to file a motion to withdraw the defendant's

guilty plea based on the <u>Blakely</u> decision.  Mr. Graper filed a motion at docket 409

advising the Court that he had met with the defendant and reviewed his claims of

ineffective assistance of counsel.  In an affidavit accompanying the defendant's

motion to withdraw his guilty plea, Mr. Graper stated "I find no merit to [the]

claim of ineffective assistance that has been alleged by Mr. Williams in either his

letters to the court or from my meeting with him on July 21, 2004."  A copy of the

Mr. Graper's motion to withdraw the defendant's guilty plea, together with his

accompanying affidavit, is attached hereto as Exhibit D.   Mr. Graper also

concluded that the <u>Blakely</u> decision did not provide grounds for the defendant to

withdraw his plea, and in fact may have worked to the defendant's benefit.

   The Court issued an order denying the defendant's motion to withdraw his

guilty plea on July 23, 2004.  A copy of the Court's Order is attached hereto as

Exhibit E.  Therein, the Court specifically addressed the defendant's claim of

ineffective assistance of counsel.  Indeed, the Order states that "the court was

dubious about the argument that defendant Williams has received ineffective assistance of counsel."  The Court then described why it reached this conclusion, stating unequivocally that the defendant did not receive ineffective assistance of counsel, but rather "advice which recommends making the best out of the very bad situation in which Williams placed himself." [Ex. E., p. 3.] The Court also confirmed that <u>Blakely</u> provided no basis to withdraw the defendant's plea.

Thereafter, on January 12, 2005, the Supreme Court decided <u>United States</u> <u>v. Booker</u>, 125 S. Ct. 738 (2005).  By rendering the United States Sentencing Guidelines advisory, this decision served to further minimize the impact of the defendant's admission at his change of plea hearing that the conspiracy involved five or more kilograms.  An imposition of sentence hearing was held on May 26, 2005.  Prior to the hearing, both counsel for the defendant (Mr. Dattan) and for the United States filed sentencing memoranda.   Prior to doing so, Mr. Dattan had objected to numerous parts of the draft PSR in a four-page letter dated January 28, 2005.  A copy of this letter is attached hereto as Exhibit F.  Therein, Mr. Dattan successfully advocated and initially convinced the USPO to reduce the defendant's base offense level to 26.[2]  In addition, Mr. Dattan successfully persuaded the

---

[2]     The United States then sent a letter to the USPO arguing that the base offense level was 32.  The USPO ultimately accepted this argument.

USPO to afford the defendant credit for acceptance of responsibility, which had been taken away in a draft PSR. In this regard, Mr. Dattan argued that, despite the fact that the defendant was accusing him of ineffective assistance of counsel, such accusation was not tantamount to a denial of responsibility for the crime. [Ex. F, p. 2.] Moreover, Mr. Dattan objected-to several paragraphs of the defendant's criminal history, ultimately securing a lower criminal history category for the defendant. [Id., p. 3.] Finally, Mr. Dattan also objected to numerous factual statements in the PSR.

As a result of Mr. Dattan's objections, the United States filed a 20-page sentencing memorandum, attaching ten exhibits. See United States Sentencing Memorandum, filed on May 10, 2006. Therein, the United States supported the objected to portions of the PSR, as well as argued that the defendant's advisory guideline range was 135 to 168 months. In doing so, the United States addressed the identical argument the defendant now advances regarding his base offense level, and cited to numerous transcripts to overcome the defendant's objections to the PSR. Citing the defendant's criminal history, his lack of a substance abuse problem, and his subtle attempts to avoid responsibility for his criminal conduct, the United States requested a top-of-the-range sentence of 168 months. In contrast, in the defendant's sentencing memorandum, Mr. Dattan argued for a

lower base offense level based on the <u>Booker</u> decision.  He also argued that the sentencing factors contained in 18 U.S.C. § 3553(a) supported a sentence of 63 months, given the defendant's remorse, prospects for rehabilitation, and his attempt to cooperate.

At the imposition of sentence hearing, Mr. Dattan continued to advocate for lenient sentence for the defendant, while not minimizing the seriousness of the defendant's crime.  A copy of the transcript from the imposition of sentencing hearing is attached hereto as Exhibit G.  Indeed, Mr. Dattan's argument consumes eight pages of transcript. [Ex. G, pp. 8-16.]  The United States argued that the defendant should receive roughly a 13-year sentence. [Ex. G, pp. 16-23.]  After hearing from the attorneys and the defendant, the Court carefully weighed the 18 U.S.C. § 3553(a) factors, as well as accepted the United States' argument that the advisory guideline range was 135 to 168 months. [Ex. G, pp. 30-33.]  However, the Court indicated that it was impressed by the defendant's remorse and recognition of the severe consequences of his criminal conduct.   Accordingly, the Court imposed a sentence of 124 months. [Ex. G, p. 33.]

Apparently not satisfied with his below-the-guidelines sentence, the defendant attempted to appeal in direct contravention of his promises to the government in the written plea agreement as well as his on-the-record statement to

the Court regarding his waiver of appeal.  The United States moved to dismiss the appeal, which motion was granted by the Ninth Circuit Court of Appeals on August 4, 2005.

On May 5, 2006, the defendant filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  The defendant asked for and received appointed counsel to represent him.  Appointed counsel filed an amended motion on September 11, 2006, expounding upon the arguments set forth in the original petition.  Counsel also moved for an evidentiary hearing that same day.  Not surprisingly, the defendant expressed dissatisfaction with his newly appointed attorney as well, filing a request for a new attorney on September 26, 2006.  Ultimately, the Court found that the defendant could proceed with his current attorney and ordered the United States to respond to the amended petition.  Essentially, the defendant advances two arguments: First, that he received ineffective assistance of counsel, primarily for identical reasons he previously raised, which relate to the five kilogram relevant conduct figure in his plea agreement; Second, that the government somehow breached its Proffer Letter with him by allowing him to plead to the identical count it cited in the letter, albeit in a superseding indictment.  Neither argument has merit, nor is an evidentiary hearing required to resolve the issues raised therein.

## TIMELINESS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 established a one-year period of limitations for collateral relief under 28 U.S.C. § 2255. The limitations period runs from the latest of several potentially applicable dates. Most commonly, the limitation period starts when the judgment of conviction against a defendant becomes final. The defendant's conviction became final on May 31, 2005. The defendant's original motion was filed on May 5, 2006, and the amended petition filed by his attorney relates back to those original claims. Thus, the petition was timely filed.

## ARGUMENT

### I.    Williams Waived His Right To Collaterally Attack His Sentence.

The defendant made an express written waiver of the right to collaterally attack his conviction and sentence, with limited exceptions. [Ex. B, pp. 14-15; 28]. The only exceptions to this waiver are for challenges alleging ineffective assistance of counsel based upon information not known to the defendant at the time the court imposed sentence, and for challenges to the voluntariness of his guilty plea. [Id.] Thus, all of the defendant's claims, save perhaps for his claim that his counsel failed to argue his case at sentencing, fail. Indeed, the defendant's chief complaint about his counsel – the drug quantity admission – was already

raised, explored by new counsel, argued before the Court, and found to be without merit.

"The right of appeal, as we presently know it in criminal cases, is purely a creature of statute..." United States v. Navarro-Botello, 912 F.2d. 318, 321 (9th Cir. 1990) cert. denied, 112 S.Ct. 1488 (1992). Accordingly, the Ninth Circuit Court of Appeals regularly enforces "knowing and voluntary waivers" of appellate rights in criminal cases when they are part of negotiated guilty pleas. United States v. Michlin, 34 F.3d 896, 898 (9th Cir. 1994); United States v. Jeronimo, 2005 WL 418560 (9th Cir., February 23, 2005).

Similarly, the Ninth Circuit recognizes and enforces waivers of a defendant's right to challenge his sentence pursuant to 28 U.S.C. § 2255. United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir.) cert. denied, 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993). Moreover, while claims of ineffective assistance of counsel are often excluded from such waivers, collateral attacks that allege ineffectiveness at sentencing and do not directly relate to the voluntariness of the plea can be waived. See United States v. Cockerham, 237 F.3d 1179, 1186-87 (10th Cir. 2001), relying in part on United States v. Broce, 488 U.S. 563, 569 (1989)

(collateral attack is "ordinarily confined to whether the underlying plea was both counseled and voluntary.").

The defendant confirmed that he understood he was waiving his right to collaterally attack his sentence when he entered into the plea agreement.

> I am fully aware that if I were convicted after trial and sentence were imposed on me thereafter, I would have the right to appeal any aspect of my conviction and sentence. Knowing this, I voluntarily waive my right to appeal my conviction. Furthermore, I also knowingly and voluntarily agree to waive my right under 18 U.S.C. § 3742 to appeal any aspect of my sentence imposed in this case, if the court accepts this agreement and imposes a sentence no greater than the statutory maximums available for this offense. <u>Furthermore, I knowingly and voluntarily waive my right to collaterally attack any aspect of my conviction or sentence, except for a challenge based upon ineffective assistance of counsel – based on information not now known by me and which, in the exercise of due diligence, could not be known by me by the time the court imposes the sentence – which affected either my guilty plea or the sentence imposed by the court.</u>

[Ex. B, p. 28 (emphasis added)].  At the change of plea hearing, the defendant acknowledged that he had read and signed his plea agreement. [Ex. C, pp. 12-13.] The Court summarized the agreement, including stating that the basic bargain included a waiver of the defendant's right to collaterally attack his conviction and sentence. [<u>Id.</u>, p. 13.] The defendant further acknowledged that he was aware that the right to collaterally attack his sentence was an important right that he was giving up. [<u>Id.</u>, p. 14.]

Moreover, even though the defendant alleges ineffective assistance of counsel, the defendant either knew or should have known the facts that formed the basis of that claim at the time his sentence was imposed. Thus, the waivers in his plea agreement foreclose these arguments. First of all, the defendant's claim of ineffective assistance of counsel relating to the drug quantity contained in his plea agreement was already raised and litigated. Appointed counsel explored the issue and found "no merit to [the] claim of ineffective assistance that has been alleged by Mr. Williams . . . ." [Ex. D.] The Court's order regarding the defendant's motion to withdraw plea similarly arrived at the conclusion that "based on what Mr. Williams had to say at the *ex parte* hearing, what Mr. Graper reports in his papers, and the court's assessment of the record in this case, there is no support for a finding that Mr. Dattan's performance fell below the level required for effective assistance of counsel." Nevertheless, the defendant now seeks to relitigate the same issue, raised before the same court, based on the same facts. However, his plea agreement collateral attack waiver forecloses this "second bite at the apple."

The only new theory that the defendant alleges regarding his ineffective assistance argument pertains to the Proffer Letter he signed with the government. This letter is dated February 4, 2004 – long before the defendant's imposition of sentence hearing. Despite the lack of merit of this argument, which is more fully

set forth below, this information was known to the defendant well before his change of plea. Tellingly, it was never raised with Mr. Graper or the Court in any ex parte hearing, his change of plea hearing, or at the imposition of sentence. If the defendant was truly relying upon this provision, he would have raised this argument along time ago. Regardless, this argument does not come within the plea agreement's § 2255 waiver exception because it was not "based on information not [then] known to the defendant and which, in the exercise of reasonable diligence, could not [have been] known by him by the time the court impose[d] sentence." [Ex. B, pp. 14-15.]

The defendant never claims that he received ineffective assistance concerning the waiver of his right to collaterally attack his sentence, or that his plea was involuntary; rather, he claims that he received ineffective assistance on admitting to relevant conduct in a plea agreement that both counsel and the Court explained to him. Not only was this argument based on information "known to the defendant" at the time the Court imposed sentence, but the argument was fully litigated and decided before the Court imposed sentence. Thus, his valid waiver of his right to collaterally attack his conviction forecloses these claims. Even his claim that his attorney "failed to argue his case at sentencing" – aside from being false – arguably is waived. See United States v. White, 307 F.3d 336, 342 (5th Cir.

2002) (waiver of right to file a § 2255 motion applied to claims that defense counsel provided ineffective assistance of counsel at sentencing proceedings following guilty plea).

## II.    Williams Claims Regarding the Proffer Letter are not Cognizable under § 2255

The defendant essentially claims that the United States violated the terms of the Proffer Letter in which the defendant was afforded use immunity and agreed to plead guilty to conspiracy to distribute controlled substances to underage persons, in violation of 21 U.S.C. § 846. [Ex. A.]  Putting aside for the moment that this is exactly the crime to which the defendant pleaded guilty, this claim is not cognizable under § 2255.  Indeed, courts have held that non-constitutional violations of federal law are not cognizable on collateral review.  United States v. Knockum, 881 F. 2d 730, 732 (9th Cir. 1989); see also  United States v. Timmreck, 441 U.S. 780, 783-84 (1979)(claim that district court violated Fed. R. Crim P. 11 by failing to advise defendant of mandatory parole term before accepting guilty plea not cognizable under § 2255); United States v. Pollard, 959 F.2d 1101, 1128 (D.C. Cir.) cert. denied, 506 U.S. 915 (1992) (breach of plea agreement by government not sufficient to raise issue under § 2255).  Moreover, claims of non-constitutional error in the application of the Sentencing Guidelines

cannot be raised in a Section 2255 motion.  United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994).

If Williams somehow believed that the United States was breaching the terms of the Proffer Letter, his remedy was simple: He should not have entered into the Plea Agreement, which replaced the earlier Proffer Letter and explicitly stated: "This document contains the complete plea agreement between the United States and the defendant, LESLIE J. WILLIAMS, JR.  No other agreement, understanding, promise, or condition exists between these two parties." [Ex. B, p. 3.]  In his colloquy to the Court, the defendant himself represented to the Court that there were no other promises other than what was contained in his plea agreement.  [Ex. C, p. 13.]

## III.    **Williams' Claims Lack Substantive Merit**

Even if the Court were to reach the merits of the defendant's claims, it would find that such claims are without basis and contradicted by the record. First, with respect to defendant's allegations of ineffective assistance of counsel based on the negotiation of the plea agreement, such claim is flatly contradicted by the defendant's unequivocal statements to the court in both the plea agreement and at the change of plea hearing. [Ex. B, pp. 28-29 ("My attorney has investigated my case and followed up on any information and issues I have raised with him to my

satisfaction and he has taken the time to fully explain the legal and factual issues

involved in my case to my satisfaction.  We have discussed how my sentence will

be calculated under the United States Sentencing Commission Guidelines as well

as the statutes applicable to my offense and any other factor that will affect the

sentence calculation in my case."); Ex. C., p. 12 ("Q: Are you satisfied with his

services as your lawyer?  A: Yes, Your Honor.")    Under Ninth Circuit law, the

court is entitled to weigh the defendant's statements at his plea hearing more

heavily than his current generalized claim that his lawyer was ineffective.  See

United States v. Castello, 724 F.2d 813, 814 (9th Cir.), cert. denied, 467 U.S.

1254, 104 S.Ct. 3540 (1984) (district court entitled to credit testimony at Rule 11

hearing over subsequent arguments and affidavit).  Moreover, the Court itself has

already found the defendant's claims of ineffective assistance apocryphal.

        With respect to the defendant's claim that his attorney was ineffective

because he failed to move for specific performance under the Proffer Letter, such

claim is similarly meritless.  Notwithstanding the fact that the Plea Agreement

effectively superseded the Proffer Letter, the defendant did in fact plead guilty to

the identical statute listed in the Proffer Letter, despite the fact that the

superseding indictment listed numerous other crimes.  Regardless, the Plea

Agreement contained a bargained for exchange in which the defendant agreed to

the five kilogram relevant conduct figure, and the United States agreed to dismiss these other counts. The defendant now appears to have "buyer's remorse" for which he seeks to blame his attorney. The problem with this argument is that the defendant himself – not his attorney – represented to the Court that he was both satisfied with his attorney and that he understood the terms of his plea agreement. [Ex. C, pp. 12 - 14.]

Finally, the defendant's reliance upon Mr. Dattan's out-of-context comment regarding his own family that was made during the sentencing hearing is insufficient to demonstrate ineffective assistance of counsel. [Ex. G, pp. 24-26.] Conveniently, the defendant ignores all of the arguments his attorney advanced as well as the benefits his attorney secured for him. See Ex. E, pp. 2 - 3 (Court's Order listing benefits of Plea Agreement conferred upon defendant); Ex. F (four page letter of draft PSR objections which caused the USPO to reduce the defendant's criminal history category, to give the defendant credit for acceptance of responsibility, and to initially reduce the defendant's base offense level); Defendant's Sentencing Memorandum, filed May 16, 2006. Ultimately, the Court was persuaded by counsel to impose a sentence below the 135 to 168 month advisory Guideline range. Such a below-guidelines sentence is a strong indication of effective – rather than ineffective – assistance of counsel.

Moreover, when counsel learned of a statement taken in violation of his client's right to counsel by his co-defendant's attorney, he filed a motion to suppress in order to preclude the United States from using such statement to enhance the defendant's sentence.  See Docket 714.  In this statement, the defendant made false allegations that eviscerated his usefulness as a cooperating witness.  In the end, the defendant – not his attorney – was his own worst enemy, as he was not used as a witness and did not receive a reduction for substantial assistance.

Even if there was some merit to defendant's allegations about his attorney, in order to succeed on an ineffective assistance of counsel claim, the defendant would have to show both inadequate performance by counsel and prejudice arising therefrom.  Strickland v. Washington, 466 U.S. 668 (1984).  He cannot meet either of these prongs.  He certainly cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.  Furthermore, the court must always "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

As set forth above, Williams himself told the court that he was satisfied with his attorney's representation.  His acknowledgment that he accepted his attorney at

the time he pled guilty defeats his subsequent claims of prejudice. United States v. Rubalcaba, 811 F.2d 491, 494 (9th Cir.), cert. denied, 484 U.S. 832 (1987) (citations omitted); Chua Han Mow v. United States, 730 F.2d 1308, 1311 (9th Cir. 1984), cert. denied, 470 U.S. 1031, 105 S.Ct. 1403 (1985). Statements made by a defendant at the time he changes his plea "carry a strong presumption of verity." United States v. Rivera-Ramirez, 715 F.2d 453, 458 (9th Cir. 1983). In Rivera-Ramirez, the defendant moved to withdraw his plea, arguing that his attorney misled him in negotiating a plea and provided ineffective assistance. The district court properly relied upon the defendant's averments at the plea hearing that he was satisfied with his representation and rejected his after-the-fact statements to the contrary. Id.

Moreover, any arguable prejudice to the defendant arising from the relevant conduct admission was eviscerated by the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005). This rendered advisory the defendant's Guideline calculation. As the transcript from the imposition of sentencing hearing demonstrates, the Guidelines were but one factor the Court considered in sentencing the defendant. Indeed, it appears that the Court weighed the 18 U.S.C. § 3553(a) more heavily than the defendant's relevant conduct admission. [Ex. G,

pp. 16, 30-33.]    Accordingly, the defendant cannot claim he suffered prejudice arising from a Guideline admission that had no binding effect on the Court.

In short, the defendant's allegations are directly contradicted by the record in this case.  To the extent they are not contradicted, Williams fails to allege any facts which, even if proven true, would entitle him to relief.  Accordingly the defendant's motion should be denied without a hearing.  United States v. Mullen, 96 F.3d 1155, 1159 (9th Cir. 1996).  See also Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998).

## CONCLUSION

Williams does not dispute the fact that he committed the instant offense. Instead, he attacks his attorney's representation in procuring a "below the Guideline range" sentence.  This sentence was well below the estimate provided in the plea agreement, which was understood by the parties and thoroughly explained to the defendant in court.  He has no basis for claiming constitutional error.

For the reasons stated above, the defendant has waived his right to collaterally attack his sentence as his claims were either fully litigated previously and found to be without merit, or should have been known to him at the time the Court imposed sentence.  Even if the Court reaches the merits, however, no evidentiary hearing is needed because no factual issues exist which, if resolved in

defendant's favor, would warrant relief.  Therefore, his motion to vacate his

sentence filed pursuant to 28 U.S.C. § 2255 should be denied.

RESPECTFULLY SUBMITTED this 17th day of January, 2007, in

Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: Frank.Russo@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2007,
a copy of the foregoing GOVERNMENT'S
OPPOSITION  TO MOTION  TO VACATE
SENTENCE UNDER 28 U.S.C. § 2255 AND
OPPOSITION TO AN EVIDENTIARY HEARING
was served electronically on Meredith Ahearn.

s/ Frank V. Russo