*Dattan Scott Dattan*
ATTORNEY AT LAW

LICENSED TO PRACTICE:
ALASKA
CALIFORNIA
FLORIDA

2600 DENALI STREET
SUITE 460
ANCHORAGE, ALASKA 99503

AREA CODE: (907)
TELEPHONE: 276-8008
TELECOPIER: 278-8571

January 28, 2005



Barbara D. Nichols
Supervising U.S. Probation/Pretrial Services Officer
222 West 7th Avenue, #48, Room 168
Anchorage, Alaska 99513-7562

RE: USA v WILLIAMS, A04-0003 CR (JWS)

Dear Ms. Nichols:

Please accept this letter as the written objections to the draft presentence report dated January 13, 2005. Also enclosed herewith, for your reference, is a copy of the motion to suppress which was filed in this matter.

Mr. Williams has the following objections:

1. Aliases.

Mr. Williams denies using any aliases except: Frank R. Burke (once) and Paulando Ramon Williams (for six months while his license was suspended. According to Mr. Williams, none of the other names (except his own, Leslie J. Williams, Jr.)) have ever been used by him.

2. Attachment A.

Mr. Williams objects to Paragraph 12 to the extent that it indicates that he provided thousands of dollars of cocaine to Mr. Boehm on a daily basis. He asserts that while he may have provided cocaine on an almost daily basis, only over a period of time did it amount to thousands of dollars. He doesn't know how much cocaine was sold by Bolling to Boehm.

**EXHIBIT I**

Mr. Williams objects to Paragraph 12 to the extent that it indicates he brought girls to Boehm. He asserts that he did not. Again, he doesn't know how many girls Bolling or Tyree brought.

Mr. Williams objects to Paragraph 23 to the extent that it indicates he had sex with "S.P." in Boehm's house. He asserts he never had sex with "S.P." in Boehm's house and never had sex with her in exchange for drugs or money.

Mr. Williams objects to Paragraph 42 to the extent that it indicates he was present during the events described therein. His brother, Paulando Ramon Williams, was present; but Leslie Williams was not. This is the first of many apparent instances of confusion between the two in the draft PSR. Please see objections to criminal history, infra.

Mr. Williams objects to Paragraph 53 to the extent that it indicates that "J.M." was "hanging out" with him or that he took "J.M." to Boehm's house. He asserts that the person with whom "J.M." was "hanging out" and who took her to Boehm's house was Bolling. Mr. Williams denies providing cocaine to "J.M." He does not know whether Bolling provided cocaine to her.

Mr. Williams objects to Paragraph 56 to the extent that it states he gave either "K.W." or "J.M." cocaine, or that he had sex with "K.W." He also denies that "K.W." ever came to his house or that he had sex with her there in exchange for cocaine. In short, he denies the factual allegations in that paragraph pertaining to him.

3.   Part A. The Offense.

Mr. Williams objects to Paragraph 20(p5) to the extent that it indicates he provided "A.M." with his car. He asserts that she stole the car. He says it was reported so to the police.

Mr. Williams takes exception to Paragraph 23 and Paragraph 34 because you have indicated that he is not entitled to adjustment for acceptance of responsibility. If you take a look at his motion, it is almost entirely grounded on Blakely v Washington and his perceived conflict with me. At no time did he deny his guilt.

This is further clarified by the pleading filed by Mr. Graper on July 21, 2004. Thus, it is obvious that Mr. Williams should receive the guideline benefit for acceptance of responsibility.

Mr. Williams objects to the base offense level calculation in Paragraph 25. There is no proof beyond a reasonable doubt and no admission from Mr. Williams that would

provide any basis at all for the conclusion that he is somehow responsible for 5 to 15 kg of cocaine. Your analysis runs directly contrary to US v Booker and U.S. v Fanfan decided January 12, 2005. Your analysis also fails to take into account Judge Sedwick's analysis and order dated July 23, 2004. At the hearing regarding his change of plea, Mr. Williams admitted to a detectable amount of cocaine, not 5 kilograms. He has always contested responsibility for 5 kilograms. Mr. Williams therefore agrees with Judge Sedwick that the appropriate base offense level is 26. See Order dated July 23, 2004. If you do not have a copy, I will be glad to provide one.

Once the adjustment for acceptance of responsibility is made, Mr. Williams' adjusted offense level should be either 23 or 24 – not 34, as you have indicated in paragraph 35.

4.   Part B. The Defendant's Criminal History.

The criminal history calculations you have provided indicated that there is a lot of confusion between Leslie and Paulando. My client, Leslie Williams, indicates, for instance, that he has never lived in California and that his brother Paulando is a cross-dresser. According to Leslie Williams the convictions you have included in Paragraphs 37, 38, 39, 40, 41, 42, 44, 46, 47, 48, 49, 50, 52, 53 and 54 are all pertaining to his brother Paulando. By the way, as far as Leslie knows, Paulando does use some of the aliases you indicated were used by him, including the female ones.

Leslie Williams admits and accepts the convictions you have indicated in Paragraphs 45, 51, 55 and 56. These convictions provide six criminal history points which would put him in Criminal History Category III, not VI as you have indicated in Paragraph 57.

Obviously there is a gigantic disparity here. Please review these convictions carefully. Perhaps you could request positive identification. Leslie Williams told me that he never lived in California, he was raised by his grandparents in Alaska (which is consistent with the information you provided in Part C, paragraph 26.) If you look at the offenses he denies being involved in, they are shoplifting, sex crimes and the like. He laughed about being charged with shoplifting a dress at Lamonts (¶'s 46 and 47). Other examples are the beauty salon burglary (¶ 53), or the prostitution type changes (¶ 48 and 49) which Leslie insists are crimes his brother, not he, was involved in.

As you know, Booker and Fanfan do not require proof of prior convictions beyond a reasonable doubt, but they still have to be provable to some degree. If those convictions which he has denied are indeed attributable to Paulando and not to Leslie, it would be grossly unfair to sentence Leslie based on those convictions.

5.  Part C. Defendant Characteristics.

In Paragraph 29 you note that he told you that he had used only Frank Raymond Burke and Paulando Williams as aliases. Again, he used the former one time and his brother's name while using a driver's license because his was suspended for six months. This isn't an objection, just corroboration of the objection to the many aliases you have indicated at the very beginning of the report.

6.  Part D. Sentencing Option.

Obviously issue is taken with Paragraph 42. My analysis is that Level 23, criminal history category III results in a sentencing range of 51-63 months. Under the circumstances of Mr. Williams' involvement in the overall case, his cooperation with the authorities and the evolution of case law regarding application of the guidelines, such a sentence would be both appropriate and reasonable.

Thank you for your consideration. I know you will take the time to make sure which Williams is responsible for which crimes.

Very truly yours,

D. Scott Dattan

DSD: if
cc: Frank Russo